(47 South. 536.)

No. 17,002.

In re QUAKER REALTY CO., Limited.

(Nov. 4, 1908.)

1. TAXATION (§ 730*) — PROPERTY SUBJECT — CONFISCATED PROPERTY—HEIRS.

Property owned by a confiscatee and sold at tax sale does not pass to the purchaser entirely free from claims of the confiscatee's heirs after his death.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1463; Dec. Dig. § 730.*]

2. TAXATION (§ 631*)—PROPERTY SUBJECT— CONFISCATED PROPERTY—HEIRS.

The property had been confiscated by the United States government.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 631.*]

3. TAXATION (§ 631*)—PROPERTY SUBJECT— CONFISCATED PROPERTY—HEIRS.

While it was held as confiscated property, it was assessed and afterward sold at tax sale.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 631.*]

4. TAXATION (§ 631*)—PROPERTY SUBJECT— CONFISCATED PROPERTY—HEIRS.

The confiscatee died. The property passed to his heirs as owners. The sale for taxes and all claims were of no avail against them, for by the laws of the United States the heirs inherit the property, and by laws of the state there can be no claim against them growing out of an assessment against the property while held as confiscated.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 631.*]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

Suit by the Quaker Realty Company, Limited, under Act No. 101, p. 128, of 1898, § 3, to quiet title. From a judgment against it, the realty company appeals. Affirmed.

William Winans Wall, for appellant. Roger Meunier, for appellees heirs of Henry St. Paul. Gustave Tontant Beauregard, curator ad hoc, appellee.

BREAUX, C. J. Plaintiff prays for judgment confirming the title it claims to 12 lots.

Eight to 12 of these lots were bought from the Aztec Land Company, Limited, in the year 1905, and 7 of these lots were bought from the Auditor of the state of Louisiana in the year 1905.

The Aztec Company (plaintiff's vendor) bought part of these lots from W. H. Howcott in April, 1903, and the other number from the Auditor of the state, who sold them to Howcott, plaintiff's vendor, by virtue of Act No. 80, p. 88, of 1888, as amended by Act No. 126, p. 181, of 1896.

This sale was made by the Auditor in the year 1902.

It is important to state here that lots 1 to 7, inclusive, of the lots in question, were bought by the state of Louisiana at a sale

made for the delinquent state taxes of 1882. This sale was made on March 14, 1885.

The act of sale was duly executed and recorded.

And the other five lots were bought by the state of Louisiana, according to another deed, for taxes of the same year.

That deed also was duly recorded.

These sales are important to bear in mind, for they give rise to the issues of the case.

The first title before us dates from the year 1837. M. Barnette, Jr., sold to J. Delhoste and Widow P. Destram. Jules Delhoste and Widow Destram sold to John Blunt Robertson.

It appears that James Moore bought all the 12 lots from John Blunt Robertson in the year 1859, and held them under recorded deed.

In this suit, to the extent disclosed by the record, the title stops here: that is, the title which comes through Robertson and others. There is no evidence of record that Moore ever transferred to the defendants in the present suit, who are the St. Paul heirs, a name (St. Paul) to which we will have to specially refer in a few minutes.

We will leave for the time being all reference to plaintiff's title, and take up for a moment the title which the defendants claim.

The following is its recital:

The late Henry St. Paul, in July, 1848, bought the whole of this property at sheriff's sale. The deed cites that the sheriff held a writ of fi. fa. issued by the Fifth district court of New Orleans, in the suit of Henry St. Paul, agent for Widow Marchand, against Leon Vial, No. 43,476 of the docket of that court.

It does not appear that this property was ever sold by the adjudicatee, St. Paul, nor does the record disclose that Leon Vial, in whose name it was sold as owner, ever owned the property.

As between the Moore title, above mentioned, and the St. Paul title, there is a divergence, a distinct chain; that is, that any one claiming under the Moore title cannot reasonably claim under the St. Paul title, for one is not a continuation of, nor connected with, the other.

The late Henry St. Paul died in the year 1886. He had been an officer in the Civil War, and fell, as related to his property, within the terms of the confiscation act of July 17, 1862, directing the forfeiture of property of those who had opposed the United States government.

In the year 1865 steps were taken and the property confiscated. The suit is entitled "United States v. Seventeen Lots of Ground, the Property of Henry St. Paul," No. 7,980 of the docket of this court. A judgment was rendered against the property of the confiscatee.

The property was accordingly sold, and it was bought at the confiscation sale, partly by Shantz and Stoll, and Rufus Waples also became owner of part of this property.

They held it for a time. It was assessed in the names of Waples and Stoll, but they failed to pay the taxes.

In course of time it was seized for the payment of the taxes for the years 1882 and 1883, and in 1885 it was sold at tax sale. The state became the adjudicatee, in whose possession it remained for a number of years. Afterward the property passed from the state into the possession and ownership of the plaintiff, who now claims, as before mentioned, that it is a valid title.

In order to ascertain the validity vel non of this title, we will have briefly to consider some of the confiscation laws of the country. There was a limit to confiscation, beyond which it was not possible to go. The result was that only the life estate of an asserted rebel could be forfeited.

The lawmaking power of this state gave further effect to the limitation than is con-

tained in the Constitution of the United States. The convention of 1879 inserted as part of the Constitution article 57, releasing the heirs of confiscated property from the payment of all taxes due thereon at the date of the reversion of the property to the heirs. The convention of 1898 reinserted the same article in the Constitution of that year.

By virtue of the act of the Legislature (Act No. 67, p. 86, of 1882), if at the death of the confiscatee there are unpaid taxes, assessed upon the property while held as confiscated, they are remitted, annulled, and released as far as the heirs are concerned.

We have no concern at this time with the parties who have held the title to confiscated property. Our whole concern is the title claimed by defendants and resisted by plaintiff.

There was a similar act adopted in the year 1886, Act No. 10, p. 20, of that session of the Legislature.

Defendants, we will state here, admitted through counsel that the property was vacant over three years preceding the filing of the suit.

We will also state that it is in evidence that the marshal charged costs for asserted possession by him of the property, and there was an act of mortgage introduced in evidence, executed in favor of a mortgagee named by Henry St. Paul at the time that he was owner of the property, long before it was confiscated.

We are led to consider in the first place plaintiff's claim to the property on the ground that its sale for taxes was a sale of a complete title, which in itself terminated all claims against the property except its own. The plaintiff further claims, through counsel, that the title is of as much effect and as complete as a title originating from sovereign authority itself.

The difficulty which the plaintiff has to meet to the end of sustaining that conten-

tion is that it has no title. It has not acquired a tax title. How can it? We are reminded of the maxim: "Ex nihilo non fit." The tax-assessing and tax-collecting departments did not have the right to assess the property, nor the right to sell it for taxes, and confer a title which can possibly thereafter prejudice the rights of the heirs. There were no taxes due by the heirs; none which could be claimed, as against defendants, in order to deprive them of the property. Under the provisions of the law above cited, the property came to them free of all taxes. If there was no tax, there was no tax title; for without a tax a title has nothing upon which to stand.

There is a decision directly in point, to wit, Brent v. City, 41 La. Ann. 1098, 6 South. 793. In that case it was clearly held that the heirs of the confiscatee take the property free from taxes under the statutes of the state upon the subject, which authorize and direct that the property should be delivered to the heirs of the confiscatee free from all taxes. As these heirs take the property free from taxes, it must be equally free from a sale for taxes assessed whilst it was confiscated property.

A distinction must be made, however, in the case of taxes due on the property assessed in the name of the adjudicatee, who owes the tax, and the case of the heirs of the confiscatee, who come into possession of the property.

Under the United States laws only the life interest is confiscated. Confiscating Act 1862 (Act July 17, 1862, c. 195, 12 Stat. 589; Joint Resolution No. 63, July 17, 1862, 12 Stat. 627).

The effect of the confiscation is at an end at the death of the confiscatee, and under the laws of the state the heirs take possession as owners, free from liability for taxes. There remains no power in the confiscatee after the confiscation to sell the property, and

as against him as the asserted offending party there remains nothing to be taxed. Jenkins v. Collard, 145 U. S. 546, 12 Sup. Ct. 868, 36 L. Ed. 812.

The property could not be sold for the taxes.

We think the judgment is correct.

The law and the evidence being in favor of the appellee, the judgment is affirmed.