(74 South. 921)

No. 21822.

BOARD OF COM'RS FOR FIFTH LOUISIANA LEVEE DIST. v. CONCORDIA LAND & TIMBER CO.

(May 22, 1916. On Rehearing, April 16, 1917.)

*(Syllabus by the Court.)*

1. TAXATION ⬥772—TAX DEED—CONSTRUCTION.

Where the language of a tax deed is susceptible of two constructions, it must be presumed that that meaning was intended which will sustain the validity of the deed, rather than that which will render it void.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1540.]

2. TAXATION ⬥805(3) — TAX SALE — ACTION TO TRY TITLE—LIMITATIONS.

All irregularities and nullities in tax assessments and tax sales are barred as causes of action by the prescription of three years, as ordained in article 233 of the Constitution of 1898, except on proof of dual assessment, or of payment of the taxes for which the property was sold prior to the date of the sale.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1595.]

3. TAXATION ⬥764(2) — TAX DEED — SUFFICIENCY OF DESCRIPTION.

Any description of property in a tax assessment or tax deed is sufficient if it furnish the means of identifying the property.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1520, 1521.]

4. TAXATION ⬥679(3)—TAX SALE—REDEMPTION.

Where property is adjudicated to the state for delinquent taxes thereon, the legal title passes to the state, subject to the right of redemption within one year from the date of the registry of the tax sale; and, if such right is not seasonably exercised, the title of the state becomes absolute. Where property has been adjudicated to the state, and not redeemed in time

and manner provided by the statute, the taxing officers of the state are without power to assess and sell said property as belonging to the former owner or any other person.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1361, 1362.]

5. TAXATION ⬥217, 329 — TAX SALE — REDEMPTION—EXEMPTION.

Where the property assessed and sold at tax sale is wild land, which the owner failed or refused to return for taxation, no possible equity can exist in his favor.

Lands adjudicated to the state and deeded to the board of commissioners of the Fifth levee district under the provisions of Act No. 44 of 1886 are by the very terms of that statute exempt from taxation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 355, 356, 549, 550.]

On Rehearing.

6. TAXATION ⬥773—TAX DEED—CONSTRUCTION OF RECITALS.

Where a tax deed representing an adjudication to the state for unpaid taxes for two or more years contains the recital merely that, there being no bid for any part of the property for a sum equal to the amount of the taxes, interest, and costs due thereon, each specific piece of property described in the deed was separately adjudicated to the state, in conformity with the provisions of the Act No. 85 of 1888, it cannot be presumed that the tax collector made a separate adjudication or offering of the property for the taxes of each year.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1541.]

7. TAXATION ⬥805(2)—TAX SALE—VALIDITY.

A tax sale made for the taxes of two years, when the taxes for one of the years had been paid, is an absolute nullity, not protected by the prescription of three years under article 233 of the Constitution.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1594.]

8. TAXATION ⬥805(2)—TAX SALE—VALIDITY—PRESCRIPTION.

A sale for the taxes of two years, when the taxes for only one of the years have been assessed, although invalid, is protected by the prescription of three years, under article 233 of the Constitution.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1594.]

9. TAXATION ⬥421(8) — TAX SALE — SUFFICIENCY OF DESCRIPTION.

For the purpose of a valid assessment and sale for taxes, it is a sufficient description to state the name by which the tract of land assessed is generally known, the name of its owner, the names of its former owners, the number of the ward and name of the parish in which

it is situated, and the area of the land within a fraction of an acre.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 731, 732.]

Appeal from Tenth Judicial District Court, Parish of Concordia; N. M. Calhoun, Judge.

Action by the Board of Commissioners for the Fifth Louisiana Levee District against the Concordia Land & Timber Company to establish title to real estate. Judgment for plaintiff for tracts 5 and 8, and judgment for defendant for tracts 1, 2, 3, 4, 6, and 7, and plaintiff appeals, and defendant answering prays that the judgment be affirmed as to tracts 1, 2, 3, 4, 6, and 7, and reversed as to tracts 5 and 8. Judgment reversed and amended and ownership of tracts 1, 2, 3, 4, 6, and 7 decreed to plaintiff, and on rehearing, as to tracts 1, 2, 3, 6, and 7 judgment appealed from in so far as it recognizes and decrees defendant to be the owner of tract 1 affirmed, and in so far as it recognizes defendant to be the owner of tracts 2, 3, 6, and 7 annulled and reversed, and ordered adjudged, and decreed that defendant is the owner of the property designated as tract 1, and that plaintiff is the owner of property designated as tracts 2, 3, 6, and 7..

G. P. Bullis and Philip Hough, both of Vidalia (Ernest T. Florance, of New Orleans, of counsel), for appellant. John Dale and Robert Dabney Calhoun, both of Vidalia (L. E. Hall, of New Orleans, of counsel), for appellee.

LAND, J. This is an action to establish title to real estate under Act 38 of 1908. The land in controversy is 1,833.10 acres, swamp woodland in Concordia parish. Plaintiff sets up titles emanating from tax sales to the state between the years 1894 to 1900.

Counsel for plaintiff state in their brief that part of the land in controversy, through error and mistake on the part of Mason & Dale, agents of the police jury of the parish, was assessed in 1900 for taxes of that year, and also for back taxes for the years 1897, 1898, and 1899; that said lands were assessed to a former owner, the Mississippi Delta Land Company, which accepted the assessment and sold the land through mesne conveyances to the defendant; that the remainder of the land in controversy was assessed on the same rolls to "unknown owner," sold for unpaid taxes so assessed, and conveyed by the purchaser, through mesne conveyances, to the defendant herein.

The defendants answering set up a deraignment of title, tracing through the tax assessments of Mason & Dale above stated, and allege various nullities in plaintiff's titles, and plead prescription and estoppel, based on the action of Mason & Dale in having these lands assessed to the defendant authors in title, and the payment of them by taxes since 1901. Both parties pleaded the constitutional prescription of three years.

The parties agreed upon a statement of facts, with leave to introduce additional evidence; and further agreed that the land in controversy should be divided into eight tracts, numbered from 1 to 8, for brevity's sake and to avoid confusion.

The case was tried, and there was judgment in favor of the plaintiff for tracts 5 and 8, and judgment in favor of the defendant for tracts 1, 2, 3, 4, 6, 7. Plaintiff has appealed; and the defendant has answered, praying that the judgment be affirmed as to tracts 1, 2, 3, 4, 6, and 7, and reversed as to tracts 5 and 8.

Defendant's plea of estoppel based on the action of Mason & Dale was overruled by the judge a quo, and is not pressed in this court.

### Tract No. 1.

Was adjudicated to the state in 1894, for the taxes of 1892 and for the taxes for 1893. It is admitted that the sale for the

taxes of 1892 was void for want of an assessment to "unknown owner" for that year.

It is also admitted in the statement of facts that tracts 1, 2, 3, 4, and 5 were in 1892 assessed to the Mississippi Delta Land Company, and that the tax was marked paid on rolls.

Defendant contends that the tax sale for the taxes of 1893 was also void, because the adjudication, on the face of the deed, was made for both years. The answer of the plaintiff is that the tax deed does not show a sale for the taxes of 1892 and 1893 "blended together, in solido."

The tax deed is the only evidence on this issue before the court.

The deed recites that the properties, three in number, offered at the tax sale, had been assessed to "unknown owners" for the years 1892 and 1893. Each property is twice described, first under the assessment of 1892, and then under the assessment of 1893. The deed recites that:

"In accordance with section 53 of Act 85 of 1888, each specific piece of property was respectively and separately adjudicated to the state of Louisiana."

The tax deed contains the following recital:

"Said properties being assessed to the following named persons as per assessment rolls on file in my office, and all described as follows."

Here follows six separate descriptions of property assessed each to "unknown owner" in different amounts, and six different tax bills. In other words, these descriptions, etc., were made just as if the properties belonged to different individuals, and there was no reason for making them except for the purposes of the tax sale.

[1] If the tax collector had intended to make one offer and one adjudication for the taxes of 1892 and 1893, one description would have sufficed. The duplication of the descriptions tends to show that the intention was to make a separate offer and ad-judication of the property for each year's taxes. The contention of the defendant that the tax deed shows on its face but one adjudication for the taxes of both years is not supported by the language of the deed. Conceding that such language is susceptible of two constructions, it must be presumed that meaning was intended which will sustain the validity of the deed, rather than that which will render it void. Cane v. Herndon, 107 La. 591, 32 South. 33. Hence we construe the tax deed to mean that tract No. 1 was offered and sold separately for the taxes of 1893. This being so, such adjudication was not affected by the absolutely void sale of the same property for the taxes of 1892. Each annual assessment of property is a separate entity. Liquidating Com'rs v. Tax Collector, 106 La. 130, 30 South. 305. The deputy tax collector who made the tax sales of June, 1894, was called as a witness for defendant, but was not asked to explain how the tracts were adjudicated.

The answer of defendant contains no attack whatever on the assessment for 1893. In the statement of facts, it was agreed that:

"A verbatim copy of pages 92, 93 of the assessment rolls for 1893 to 'unknown owner' shall be filed in evidence."

Such copy was filed in evidence. On the trial of the case, the defendant offered a witness, who assisted in making the assessment roll for 1893, to prove how he arrived at the estimate in fixing the acreage tax on the roll. Plaintiff objected on the grounds that the roll was the best evidence, and that there was nothing in the answer or pleadings authorizing the introduction of such evidence. The objections were overruled, and bill reserved. The witness testified in effect that the roll, without extrinsic evidence, did not furnish sufficient data for determining which specific sections were assessed with the 5-cent acreage levee tax. The assessor, however, as shown by the tax statements

appearing in the tax collector's deed of sale, found data for fixing the acreage taxes. We think that the objection to this testimony should have been sustained. Other objections, such as the failure of the assessor to properly extend the taxes on the assessment rolls, are urged in defendant's brief. But no such issue was raised by the pleadings, and the contention that the filing of the assessment roll in evidence, as stipulated, enlarged the pleadings, is obviously without merit.

[2] Even if the irregularities above mentioned had been specially pleaded, it would have availed the defendant nothing, because all causes of nullity except dual assessment and prior payment of taxes have been barred by the constitutional limitation of three years.

### Tract No. 2.

[3] Excerpts from statement of facts:

"That on the assessment roll for 1893 there appears the following: 'Greenleaf, Mrs. G. H.— Schwartz—Ward 9—1,260 acres, formerly owned by Wallace & Greenleaf.' That there was no other assessment of said property for said year, and the taxes were not paid.

"That the tax collector for Concordia parish, La., adjudicated to the state of Louisiana by deed dated July 1, 1895, recorded July 19, 1895, * * * the following: 'Mrs. E. L. Greenleaf, the Schwartz tract, containing 1,280 acres; S. ½, W. ½ and N. W. ¼ Sec. 1, S. 2, T. E R. 8. lots 2 and 3 in N. E. ¼, west of Cocodra, Sec. 27, E. ½ of N. E. ¼ Sec. 34, E. ½ of S. E. ¼ Sec. 34; frts. ½ section 35 W. of Cocodra, T. 7, R. 8, lots in N. W. ¼ Sec. W. of Cocodra, T. 7, R. 8, less 16P acres sold to W. H. Payne.'"

It was also admitted that tract No. 2 was assessed to W. H. Payne for the year 1896, and there was no dual assessment and the tax was not paid; and that said tract was adjudicated under the assessment to the state of Louisiana in May, 1897, recorded July 19, 1897.

The defendant in its answer averred:

"That this assessment is not sufficient to identify the property, as Schwartz owned another tract of land in the parish in close proximity of the above tract, which was also known as the Schwartz tract."

Defendant adduced no evidence to prove that there was another Schwartz tract in the vicinity. Plaintiff proved that in 1857 J. C. Schwartz made two purchases of land in the parish of Concordia, aggregating 1,402.99 acres; in April, 1881, the same property described as "1,419 acres of land, more or less, known as the Schwartz lands," was sold at sheriff's sale and purchased by W. I. Wallace and George H. Greenleaf; in December, 1881, Wallace sold his interest to Greenleaf; and in December, 1889, Mrs. E. L. Greenleaf, as executrix of Geo. L. (H.?) Greenleaf, sold 160 of the Schwartz tract to W. H. Payne by special description.

It is to be noted that in the assessment of 1893 the Schwartz tract is described as containing 1,260 acres. This indicates that the assessor deducted the 160 acres sold to Payne. It is also described as in Ward 9, and as "formally owned by Wallace & Greenleaf."

The general revenue act 1890 (No. 106, p. 120, § 8) provides:

"That if the land to be assessed be a tract or lot known by a name, or if the owner's name be known, it shall be designated by those particulars and by its boundaries."

The assessment in question gives the name of the owner, the name of the tract, the number of acres, and the name of the former owners. An examination of the sheriff's sale to Wallace & Greenleaf, and of the sale of Greenleaf's executrix to H. H. Payne, would have furnished a perfect identification of the property.

Section 4 of Act 140 of 1890 reads as follows:

"That the tax sale shall convey and the purchaser shall take the entirety of the property, neither more nor less, intended to be assessed and sold and such as it was owned by the delinquent tax payer, regardless of any error in the dimensions or description of the property assessed and sold and the tax collector in the advertisement or deed of sale may give the full description" of the property assessed and sold.

Section 3 of the same act reads as follows:

"That no assessment or tax sale shall be set aside or annulled for any error in description or measurement of the property assessed, in the name of the owner, provided the property assessed or sold can be reasonably identified."

It is well settled that this identification may be completed by proof, aliunde the title, of any and all relevant facts. See Martinez Case, 125 La. 663, 51 South. 679, and In re Perrault's Estate, 128 La. 453, 54 South. 939. In the latter case the description was as follows:

"Heirs of C. L. and J. L. Williams, 960 acres, swamp land in T. 6, R. 5 E., parish of St. Landry."

And the identification was completed by proof that the tax debtors owned no other land in the township.

Under section 4 of Act 140 of 1890, cited supra, the tax collector had the right to give the full description of the property assessed in the advertisement and deed of sale; and the purchaser took the entirety of the property. as it was owned by the delinquent taxpayer.

As descriptions, "giving lines and measurements," as set forth in recorded deeds, is all that section 8 of Act 85 of 1888 requires in assessments, it is obvious that an objection that such a description is insufficient to locate a certain tract of land is without merit. The purchaser takes the property in its entirety "regardless of any error in the dimensions or description." And the constitutional prescription of three years cures all irregularities and nullities in tax assessments which furnish the means to reasonably identify the property.

Tracts 2 and 3 were assessed to W. H. Payne in 1896 and adjudicated to the state in 1897. Tax was not paid on either for the year 1896. What has been stated under the head of tract 2 applies to tract 3.

### Tract No. 4.

[4] This tract was assessed for the year 1899 to Samuel H. Marcus. There was no dual assessment, and the tax was not paid prior to the tax sale. The tract was adjudicated to the state by deed of date May 25, 1900, recorded May 26, 1900.

Tracts Nos. 1, 2, 3, 4, and 5 were assessed to the Mississippi Delta Land Company on the assessment rolls for 1900, and in the same year back-assessed to said company for the years 1897, 1898, and 1899. Since 1900, all the lands in controversy, tracts 1–8, inclusive, have been assessed to defendants or their authors in title, and all of said taxes have been paid.

Section 61 of Act 85 of 1888 required that the property adjudicated to the state be continued to be assessed to Marcus until the lapse of one year from the date of the recording the act of sale to the state. Hence the assessor had no authority to assess the property to the Mississippi Delta Land Company for the year 1900. The property was redeemable within said period on payment to the treasurer of the state of the taxes, interest, and costs, and 20 per cent. of the price given. Section 62, Id. No payment whatever was made to said treasurer at any time. Hence there was no redemption of the property. The payment of the taxes for 1899, without interest, penalties, and costs, would not have redeemed the property, even if it had been made to the treasurer of the state.

It is settled in our jurisprudence that the state is not estopped by reason of the fact that the tax assessor has erroneously assessed land, adjudicated to the state, for taxes, to some individual or corporation, and the taxes so assessed have been paid to the tax collector. See Quaker Realty Co. v. Purcell, 134 La. 1022, 64 South. 894, and authorities therein cited.

Lands adjudicated to the state may be redeemed; but, if not, they become the absolute property of the state, to be sold in the manner prescribed by the statutes. The adjudication vests a present title in the state,

with the right to the possession and to all the revenues of the property. Section 58, Act No. 85 of 1888.

### Tracts Nos. 5 and 8.

We make the following excerpts from the statement of facts:

"That William Eby acquired the N. E. ¼ of S. E. ¼ Sec. 36, T. 5 N., R. 6 E. in 1890, and that he owned no other land in Concordia parish, La. That said Eby was assessed for the year 1894, as follows: 'Wild Cow—Frl. N. E. ¼ Sec. 32 T. 5 N., R. 7 E. and N. ½ of S. E. ¼ Sec. 36 T. 5 R. 7, 80 acres.' That there was no dual assessment of the land assessed to said Eby for 1894, and the tax was not paid on said land."

It is admitted in the statement of facts that under said assessment the tax collector adjudicated to the state tracts Nos. 5 and 8 by deed of date July 1, 1895, recorded July 19, 1895.

The judgment below recognizes plaintiff's title to these tracts.

We make the following excerpts from defendants' brief:

"The facts developed show that, at the time of the assessment, W. Eby owned a 'forty' in Sec. 36, Tp. 5, R. 6, but that he owned none of the land assessed to him in Sec. 32 Tp. 5 R. 7, or in Sec. 36 Tp. 5, R. 7.

"Defendant, at that time, had a recorded title to tract 5, and its title to tract 8 having come into existence subsequently, in 1901, and not then being in Eby, was owned by other parties, as was Frl. N. E. ¼ of Sec. 32, Tp. 5, R. 7."

Defendant contends that the assessment to Eby was one in globo of distinct governmental subdivisions, belonging to different owners, and for these reasons was absolutely null and void. This contention, we think, is fully answered by the following quotation in the opinion of the judge a quo:

"That it is immaterial for the purposes of prescription established by the provision (article 233, Const. 1898) whether an assessment has been made in the name of one person or another, or in no name, or whether the owner has been notified of the intention to sell, or has not been notified, or whether the sale has been advertised, or has not been advertised"—citing Weber's Heirs v. Martinez, 125 La. 666, 51 South. 679, and other authorities.

141 La.—9

In other words, article 233 of the Constitution, where there has been an assessment and a tax sale, cures all nullities therein, where the taxes were due on the property, and were not paid prior to the tax sale, under any assessment.

### Tracts Nos. 6, 7, 8.

[5] These tracts were adjudicated to the state in 1895, and certified to plaintiff board in February, 1897. In 1901, these tracts were adjudicated to one Averill under tax assessments against sundry persons, and his title passed by mesne conveyances to the defendant.

The contention of the defendant is that lands adjudicated to the state for delinquent taxes are not "public property" in the sense of the Constitution, and that in such case, if the taxing officers assess and sell the lands, while they are not authorized to do so, yet they act within the scope of their authority and bind the state and its municipal creatures. The defendant further contends that the constitutional prescription of three years is an absolute bar to the annulment of said tax sales to Averill. Per contra, the plaintiff contends that lands adjudicated to the state for taxes, and deeded to levee boards, are exempt from taxation. Section 11 of Act No. 44 of 1886, relative to the Fifth Louisiana levee district, granted to its board of commissioners, "all lands forfeited or sold to the state for nonpayment of taxes, situated in said district and liable to overflows," and declared:

"That said lands shall be exempted from taxation during the period they shall remain unsold by said board."

The lands in said tracts were deeded to said board of commissioners in the year 1897, and became the property of said levee district. The tax assessment and sale of these lands in 1900–01, by the state taxing officers, was a manifest violation of the exemption

granted by Act No. 44 of 1886, which has never been assailed as unconstitutional. That property exempt from taxation cannot be assessed and sold for taxes is a self-evident proposition. The claims of the defendant to these tracts under the tax sales to Averill were disallowed by the trial judge.

It is admitted that from 1893 to 1899, both inclusive, tracts Nos. 1, 2, 3, 4, and 5 were not assessed to the Mississippi Delta Land Company, except part of W. ½, section 2, township 4, range 7. In other words, said company made no return of said lands for taxation during those years.

The said company owned a large number of other tracts, containing many thousands of acres, which it returned for taxation. The omission of the five tracts from the company's lists of taxable property was due to its failure to return, under oath, a correct and complete list of all of its property in the parish as required by sections 13 and 14 of Act No. 106 of 1890.

The company had no actual possession of said five tracts of land, and therefore the cases cited by defendant's counsel where the tax debtor was in actual possession at the time of the tax sale, and continued in possession, paying taxes to the state, have no application.

As to said five tracts, the constitutional limitation of three years has barred all causes of nullity, save dual assessment or prior payment of taxes.

As to tracts 6, 7, and 8, they belonged to the levee board, and were exempt from taxation.

The argument that the defendant has acquired these three tracts by the constitutional prescription of three years confuses prescription as a bar, with prescription as a mode of acquiring property.

We find in the transcript a copy of the assessment for 1893, and a copy of the tax sale of 1894, based on said assessment, but no copy of any other assessment or of any other tax sale. Hence, outside the statement of facts, there is no evidence as to how the other tax sales referred to in defendant's brief were made.

It is therefore ordered that the judgment appealed from be so reversed and amended as to decree that the plaintiff is the owner of tracts 1, 2, 3, 4, 6, and 7, less the S. W. ¼ of the S. W. ¼, section 2, township 4, range 7, 43.24 acres, as described in the opinion of the trial judge, and it is further ordered that said judgment as thus amended be affirmed, and that the defendant pay costs in both courts.

## On Rehearing.

O'NIELL, J. The rehearing granted in this case is limited to the contest over the lands designated as tracts 1, 2, 3, 6, and 7; as to which the district court rendered judgment rejecting the plaintiff's demand and confirming the defendant's title.

[6] The plaintiff's claim to tracts 1, 6, and 7 depends upon the validity of a tax sale made to the state in 1894 for the taxes of 1892 and 1893, under an assessment to "unknown owner." There was no assessment of these tracts of land to "unknown owner" in or for the year 1892. There was no assessment at all of tracts 6 and 7 in or for the year 1892, hence no warrant whatever for the sale of the property for the taxes of that year. Tract No. 1 was assessed to the Mississippi Delta Land Company in and for the year 1892. That company was the owner of tract No. 1 in 1892, and its title was a matter of record. The taxes assessed on tract No. 1 in and for the year 1892 were paid by the owner, the Mississippi Delta Land Company, before the adjudication. Hence the sale of that tract for the taxes of 1892, assessed to "unknown owner," was an absolute nullity, not only because there was no assessment of the property to "unknown owner" for that year, but because the taxes

for that year were paid prior to the adjudication.

In the original opinion handed down in this case, it was held that the sale of tracts 1, 6, and 7, for the taxes of 1893, was valid, and that its validity was not affected by the illegality of the sale of the same property for the taxes of 1892. That was on the presumption that the tax collector had made two separate and distinct adjudications, one for the taxes of 1892 and the other for the taxes of 1893. After a more thorough examination of the tax deed and of the law under which it was made, we have concluded that it cannot be presumed that the tax collector made two adjudications of the same property, one for the taxes of 1892 and another for the taxes of 1893. The tax deed does not contain any recital to warrant that presumption. On the contrary, it is recited in the deed that, there being no bid for any part of the property for a sum equal to the amount of the taxes, interest, and costs due thereon, each specific piece of property described in the deed was separately adjudicated to the state. Hence it appears that the adjudication of each piece of property described in the deed was made for the full amount of the taxes, with interest and costs, due thereon for both years, 1892 and 1893.

The fact that each tract of land is described twice in the deed—that is, in the supposed assessment and tax list for the year 1892 and again in the assessment and tax list for the year 1893—does not signify that each tract was sold twice or offered for sale twice. In a tax sale for the accumulated taxes of two or more years, it is proper that the deed should contain a statement of the taxes, interest, and costs due for each year, and that such statement should contain a description of the property assessed for each year. The tax deed, in this instance, contains the declaration that it was made in conformity with the provisions of the Act No. 85 of 1888. That statute did not require the tax collector to make a separate offering of the property for sale for the taxes of each of the years for which it was assessed. On the contrary, the law required him to offer for sale and sell the least quantity of each tract that any bidder would buy for the total amount of taxes, interest, and costs due thereon. If any one of the tracts had been offered for sale and adjudicated for the taxes, with interest and costs, due for only one year, the tax collector would have had no means of collecting the taxes, interest, and costs due for another year. Under the maxim, "Omnia præsumuntur rite et solemniter esse acta," our presumption and conclusion is that the tax collector made only one offering and adjudication of each tract of land for the total amount of the taxes, interest, and costs supposed to be due for both years.

[7, 8] As to tract 1, on which the taxes for the year 1892 had been paid by its owner, the Mississippi Delta Land Company, there can be no doubt that the sale made for the taxes of 1892 and 1893 was and is absolutely null. To that nullity, the prescription of three years, under article 233 of the Constitution, does not apply. That was decided precisely, in a case remarkably similar to the one before us. Doullut v. Smith et al., 117 La. 491, 41 South. 913. In that case, a tax sale made in 1895 for the taxes of 1893 and 1894 was held to be null and void, not protected by the prescription of three years under article 233 of the Constitution, because the taxes for 1892 had been paid prior to the adjudication. In Harris v. Deblieux, 115 La. 147, 38 South. 946, a tax sale was declared null and void, not protected by the prescription of three years under article 233 of the Constitution, because there was included in the assessment of the taxes for which the property was sold a poll tax of $1, which had been paid. That case was cited with ap-

proval in Page v. Kidd, 121 La. 6, 46 South. 35, where it was said:

"Moreover, viewed from every point, the owner paid some taxes on this property. If it should not be on the whole property, it is payment, at least, on part of it; and in that case it has been held as a payment that would defeat the prescriptive period of article 233 of the Constitution. Harris v. Deblieux, 115 La. 154, 38 South. 946."

We adhere to the doctrine of the decisions cited above, that a sale for taxes, a part of which have been paid, is null, and is not protected by the prescription of three years provided in article 233 of the Constitution. Hence the judgment of the district court, in so far as it rejects the plaintiff's claim to tract 1 and recognizes the defendant to be the owner of it, must be affirmed.

The defect in the tax sale of tracts 6 and 7, however, is quite different. As stated above, these tracts were not assessed at all for taxes in or for the year 1892; hence no taxes were paid on those tracts by any one, in or for the year 1892. The tax collector had no authority to sell tracts 6 and 7 for the collection of taxes for 1892, because no taxes for that year had been assessed. If he had made the sale for those taxes alone, it would be null. See Morton v. Xeter Realty Co., 129 La. 775, 56 South. 883, citing Rougelot v. Quick, 34 La. Ann. 123, and Booksh v. Wilbert's Sons, 115 La. 358, 39 South. 9. And such an invalidity could not be made valid by the prescription of three years. See Guillory v. Elms, 126 La. 560, 52 South. 767. But the tax collector had authority to make the sale for the taxes of 1893, which were regularly assessed and not paid. The sale was made for those taxes, as well as for taxes for 1892. The inclusion of the amount claimed for taxes for 1892, with the taxes for 1893, for which the property could be legally sold, was, of course, wrong; and the tax debtor could have prevented the sale by paying, or offering to pay, only the taxes of 1893. But the tax debtor made no such offer or protest, and did not contest the validity of the sale until long after the time allowed by the Constitution for demanding that the sale be annulled had expired. The invalidity resulting from the inclusion of an amount for taxes that were not assessed, with the taxes that were assessed and for which the sale could be legally made, was nothing more than if the tax collector had, by some other mistake, augmented the amount of the taxes that were assessed. It might be argued with much force—to a constitutional convention— that a sale of property for taxes that have been paid is no better than a sale for taxes that have not been assessed or that the owner of the property does not, for any other reason, owe. But we have this reason for recognizing a distinction between a sale for taxes that have been, even in part, paid, and a sale for taxes a portion of which have not been assessed, or are not due for some other reason: That the Constitution of this state provides that no sale of property for taxes shall be set aside for any cause, except on proof of dual assessment or of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time for redemption has expired, and within three years from the date of recordation of the tax deed, if no notice is given.

The invalidity resulting from the inclusion of an amount for taxes that were not assessed, with those that were assessed and for which a tax sale is made, is not excepted from the causes of nullity for which a tax sale cannot be set aside after three years from the date of registry of the tax deed. Hence the judgment of the district court, in so far as it rejects the plaintiff's claim to tracts 6 and 7 and decrees that the defendant is the owner of them, must be reversed.

The plaintiff's title to tracts 2 and 3 is based upon two tax sales of them, one made for the taxes of 1893 assessed in the name of Mrs. G. H. Greenleaf, and the other for the taxes of 1896, assessed in the name of W. H. Payne. The defendant contends that the assessment for 1893 did not contain a description sufficient to identify any particular property. The assessment was as follows, viz.:

"Greenleaf, Mrs. G. H.—Schwartz—Ward 9— 1,260 acres, formerly owned by Wallace & Greenleaf."

[9] In the answer to this suit, the defendant alleged that the description was not sufficient to identify the Schwartz tract claimed in the plaintiff's petition, because Schwartz owned another tract of land in close proximity to the land claimed, also known as the Schwartz tract. The evidence does not bear out that contention. The proof is that a man named Schwartz sold to Wallace & Greenleaf, in 1881, a tract of land containing 1,419.59 acres, which was afterwards acquired by Mrs. Greenleaf. It is situated in the Ninth ward of the parish of Concordia and was generally known as the Schwartz tract. Mrs. Greenleaf sold to W. H. Payne 160 acres of the land in 1889. The remaining area of the Schwartz tract was therefore, at the time of the assessment in the name of Mrs. Greenleaf, 1,259.59 acres. Hence the area stated in the assessment was not quite half an acre more than the tract actually contained. Our opinion is that, for the purpose of a valid assessment and sale for taxes, the description of the land, stating the name of its owner, the name by which the tract was generally known, the names of its former owners, the ward in which it was situated, and its area, within a fraction of an acre, was a sufficient description to identify the land belonging to the party in whose name it was assessed.

It is contended by the learned counsel for the defendant that the 160 acres sold by Mrs. Greenleaf to W. H. Payne, in 1889, has not been accurately located, and that therefore the remaining portion of the Schwartz tract that was sold for taxes assessed in the name of Mrs. Greenleaf cannot be definitely located. We find no merit in that contention. The land sold by Mrs. Greenleaf to W. H. Payne is described in the deed by a survey; that is, by the bearings and distances encompassing 160 acres. The starting point is given at an iron pin on the west bank of Bayou Cocodra, due east from a large cottonwood tree on the bluff of the bayou, and the boundary line runs thence S. W. ½ mile, thence S. E. ½ mile, thence N. E. ½ mile to Bayou Cocodra, thence up the bayou to the starting point. We do not doubt that a surveyor could locate the property described in that manner. But it appears to us that the question of location of the Payne tract is a matter to be settled between its owner and the owner of the remaining portion of the Schwartz tract, out of which it was or is to be carved. The fact that the sale of that tract of 160 acres by Mrs. Greenleaf to W. H. Payne left in the original Schwartz tract approximately the area stated in the assessment in question is the only matter of importance here with reference to the Payne tract.

For the reasons assigned, the judgment appealed from, in so far as it recognizes and decrees that the defendant is the owner of the property designated as tract 1, is affirmed, and, in so far as it recognizes the defendant to be the owner of the tracts designated as 2, 3, 6, and 7, is annulled and reversed; and it is now ordered, adjudged, and decreed that the defendant is the owner of the property designated as tract 1, and that the plaintiff is the owner of the property designated as tracts 2, 3, 6, and 7.