For the reasons assigned, the judgment appealed from is affirmed.

JOHNSON v. CHAPMAN et al.*

No. 5464.

Court of Appeal of Louisiana. Second Circuit.

June 30, 1937.

Rehearing Denied Oct. 29, 1937.

Writ of Certiorari and Review Granted Jan. 10, 1938.

---

* Affirmed by Supreme Court March 7, 1938.

P. E. Brown, of Arcadia, for appellant.
Goff & Goff, of Arcadia, for appellees.

TALIAFERRO, Judge.

This is a petitory action. Plaintiff prays to be decreed the owner of an undivided one-half interest in the south 26 acres of the N.E.¼ of N.E.¼ of section 18, township 17 north, range 6 west, situated in Bienville parish, and to be placed in possession thereof. J. D. Chapman, present possessor, and his grantor, W. L. Hamner, are impleaded as defendants.

This land was allotted to Drilla Chapman in the partition of the real and personal property of her father and mother, Dock and Tinie Johnson, on December 24, 1895, according to act recorded in Conveyance Book E, folio 304, of the parish of Bienville. At her death she left two children, viz., J. D. Chapman, defendant, and Pattie P. Chapman, who inherited the land jointly. Pattie lived thereon until her death in April, 1930. She sold her interest therein to plaintiff on January 24, 1930. J. D. Chapman continuously resided on the property and has farmed portions of it to the present time.

For the year 1921, this land with an adjoining tract was properly assessed to D. Chapman (evidently intended for Drilla Chapman). The tracts were adjudicated to the state, after advertisement, etc., on Sep-

tember 2, 1922, for delinquent taxes under this assessment.

For the year 1922, these two tracts, plus another in section 8, were assessed to H. G. Chapman, and on June 16, 1923, were adjudicated to the state by the tax collector. This assessment, as concerns the land sued for, evidently was erroneous, as H. G. Chapman at no time ever owned the land. The register of the state land office so held, as will hereinafter be shown.

The S.½ of N.E.¼ of N.E.¼ of section 18, township 17 north, range 6 west, with other lands, was again assessed to H. G. Chapman for the year 1927. At tax sale thereunder on June 23, 1928, W. L. Hamner became the purchaser. The assessment was repeated for 1928, and again Hamner became the purchaser at tax sale on June 19, 1929. On January 6, 1932, Hamner sold and conveyed to J. D. Chapman the south 26 acres of the N.E.¼ of N.E.¼ of section 18, with another tract included in his tax deeds; and on November 17, 1934, a correcting deed was executed by the parties wherein the above description in the act of sale was changed to read: S.½ of N.E.¼ of N.E.¼ of section 18. At this juncture we make the observation that of the 26 acres allotted to Drilla Chapman in the partition, 6 acres lie on the north side of S.E.¼ of N.E.¼ of section 18. The other 20 acres embrace the S.½ of N.E.¼ of N. E.¼.

More than two years before this suit was filed, plaintiff advanced to the register of the state land office the required amount of money to redeem the property sold to the state for the taxes of 1921 in the name of D. Chapman, and formal redemption certificate was issued and recorded. At the same time the register issued and signed a certificate wherein it is declared that there was evidence on file in that office disclosing that the tax sale to the state in H. G. Chapman's name on June 16, 1923, for the taxes of 1922, was erroneous, and for this reason said tax sale was declared canceled. The recorder of Bienville parish was directed to cancel the evidence of it on his records.

Plaintiff attacked the two tax deeds to Hamner as being illegal, null, and void for the reason that at the time and for the years' taxes made, the state held an indefeasible title to the lands herein involved under the adjudication in the name of D. Chapman for delinquent taxes of 1921; and therefore no taxes could be legally assessed and levied against the property and no valid sale could be made under such illegal assessment.

Defendant Hamner stands upon and asserts the validity of the two tax sales to him and pleads the constitutional prescription of three years in bar of the attack against them. Section 11, article 10, Constitution of 1921. He avers that he took possession of the land under said tax sales, had same farmed, and collected rents for its use from tenants until he sold it to Chapman; and that Chapman has so possessed the land since his acquisition of it. Chapman's answers and the defenses urged by him are virtually the same as Hamner's. He also pleads the prescription of three years in bar of the attack on the tax deeds to Hamner.

Plaintiff's demands were rejected. The plea of prescription was maintained and defendant's possession of the land quieted. Plaintiff has appealed.

During the years 1930, 1931, and 1932, plaintiff cultivated portions of the land he sues for and cleared parts of it of timber. He did not reside on it. J. D. Chapman, during these years, lived on the tract or on the six acres adjoining it on the south, and also cultivated some of it.

In October, 1933, plaintiff sued Chapman for $75, or one-fourth of the crops produced on the land for that year, and provisionally seized the crops in sight at the time. Chapman bonded the seizure, but did not defend the suit. Judgment for $75 was rendered against him, with recognition of the seizure.

Additional efforts of plaintiff to exercise any sort of possession of the land resulted in his arrest, with orders to stay off of it. He decided to do so until the questions of ownership and possession were adjudicated by the courts. On March 19, 1936, Chapman instituted against him a possessory action which was tried after issue was joined by answer. Judgment was rendered and signed on June 19, 1936, recognizing Chapman's superior possession and enjoining Johnson from disturbing him in its enjoyment. No appeal was prosecuted from this decree and it is now final. However, the present suit was filed prior to rendition of judgment in the possessory action.

Hamner testified that after the tax deeds to him he leased the land to J. D. Chapman and his sister and collected rents from them. Chapman admits that when he learned that Hamner had a tax title to the land, he and his sister continued to occupy and use it

as his tenants. The fact that the sister sold her interest in the land to plaintiff in January, 1930, to which act of sale J. D. Chapman acted as attesting witness, impresses us strongly with the thought that they both considered her interest was then intact.

The well-recognized rule that a tenant may not assert title to the leased premises as against that of his lessor, so long as he is in possession thereof, is invoked against plaintiff. The rule finds no application here because plaintiff at no time was a tenant of Hamner or J. D. Chapman. His acts of possession were as owner, under an authentic act of sale from one while in possession, we think, as owner, and who has since died. The rule mentioned is an equitable one and has a logical basis. It does not inhibit the tenant from suing to recover the whole or an interest in property the object of the lease after he has abandoned possession of it. Even though it be conceded that Pattie Chapman did pay Hamner rent on the land, this fact would not estop plaintiff from suing under deed from her. Title to real estate is rarely ever lost or acquired through estoppel.

Defendants also argue that only H. G. Chapman or someone holding possession under him could maintain the necessary possession of the land to defeat or suspend the current of the prescription pleaded. This position is not tenable. Possession by the record owner, whether the sale was made in his name or not, may be invoked against the running of this prescription. These conclusions reached by us eliminate from consideration the plea of prescription relied upon by defendants.

When these tax sales to Hamner were made, the state owned the land under sale to it for the taxes of 1921. Its tax deed was and is prima facie valid. Constitution, art. 10, § 11. There is no suggestion in the record that all legal prerequisites and formalities were not complied with as a condition precedent to the sale. These are presumed to have been complied with. If not followed, in any case, the tax sale, defective only because of such vices, is confirmed by the prescription of (new) five years, formerly three years. If the law is strictly observed previous to a tax sale, no prescription is necessary to validate it; and in such cases continued possession by the tax debtor or his heirs, or someone holding under him or them, will not affect the sale. Carey v. Green, 177 La. 32, 147 So. 491.

It is only where the law has not been complied with prior to a tax sale and the tax debtor or someone holding under him continues to exercise possession over the property, that the current of this prescription is suspended.

Section 61 of Act No. 170 of 1898, as amended by section 5 of Act No. 315 of 1910, ordains that property adjudicated to the state for delinquent taxes shall be assessed for one year from the registry of deed in the name of the person to whom it belonged at the date of such sale, but prohibits any sale under this assessment, and further provides:

"And no error of the tax collector in receiving taxes under said continuous assessment or other erroneous assessment and non continued possession of said property by said former owner shall ever be considered or construed by any court of this State as an estoppel of the State from claiming said property or as affecting in way the title of the State to said property or its rights to possession thereof."

See Quaker Realty Company v. Purcell, 134 La. 1022, 64 So. 894; Ebert v. Woodville, 143 La. 874, 79 So. 521; Quaker Realty Company v. Labasse, 131 La. 996, 60 So. 661, Ann.Cas.1914A, 1073.

"Whatever is done in contravention of a prohibitory law is void, although the nullity be not formally directed." Revised Civil Code, art. 12.

The right of the owner (tax debtor) and his heirs to redeem property adjudicated to the state for delinquent taxes after the expiration of twelve months is distinctly recognized by the Legislature. Such a right has been expressly upheld by the Supreme Court of the state in at least two cases. In Charbonnet v. Forschler, 138 La. 279, 70 So. 224, it is held:

"Property adjudicated to the state for delinquent taxes, and redeemed by the owner thereof by paying the taxes, interest, penalties, and costs, after 12 months have elapsed since the deed to the state was recorded, *becomes the property of the original owner.*"

This decision is quoted and reaffirmed in Lomel Realty Corporation v. Chopin, 177 La. 474, 148 So. 683.

In Neal et al. v. Pitre et al., 142 La. 737, 77 So. 582, it is held:

"Where property has been adjudicated to the state at tax sale, and several years

later it is again sold at a tax sale, based on an assessment made in the name of 'unknown owners,' the latter sale is a nullity."

To the same effect are Board of Commissioners v. Concordia Land & Timber Company, 141 La. 247, 74 So. 921; Riggs Cypress Company v. Albert Hanson Lumber Company, 127 La. 450, 53 So. 700; In re Quaker Realty Company, 122 La. 229, 47 So. 536; State ex rel. McGregor v. Diamond, La.App., 167 So. 760.

■ The state having allowed plaintiff to redeem the property to which it held indefeasible title, thereby restored same to the owners as of the date of the sale, or their transferees. The benefits flowing from the redemption devolved upon plaintiff as effectively as they would have upon Pattie Chapman or her heirs, had she not conveyed. The surrender by the state of its title to the land did not have the effect of injecting vitality into the tax deeds to Hamner, which were null and void ab initio.

■ It is said in brief that the tax sale to the state in the name of D. Chapman was invalid because the property therein described was dually assessed for 1921. The record does not disclose a dual assessment for this year. If such were true, and taxes were not paid under either assessment prior to the sale, this would not invalidate the sale made under the correct and proper assessment. Dual assessment, per se, under the Constitution of 1921, is not cause for annulling a tax sale. It was so under the Constitutions of 1898 and 1913.

For the reasons herein assigned, the judgment appealed from is reversed, annulled, and set aside; and there is now judgment in favor of plaintiff, Gip Johnson, and against defendants J. D. Chapman and W. L. Hamner, recognizing plaintiff as the owner of an undivided half interest in and to the S½ of NE¼ of NE¼ of section 18, township 17 north, range 6 west, situated in Bienville parish, La., and as such owner, he is entitled to possession thereof. The two tax deeds to W. L. Hamner, herein discussed, are hereby decreed to be null and void and are hereby ordered canceled from the records of said parish.

It is further ordered that all costs of suit be paid by defendants.

On Application for Rehearing.

PER CURIAM.

Defendants complain of the judgment herein and, in support of their application for a rehearing, assign errors. Only two of these have merit and the subject-matter involved in each and discussed in our judgment may be clarified without the granting of a rehearing.

First. Our decree recognized plaintiff as the owner of an undivided half interest in the S½ of NE¼ of NE¼, section 18, township 17 north, range 6 west, and ordered canceled from the records the two tax deeds to defendant, conveying this and other lands. It was not our purpose to decree these two tax deeds null and void and order them canceled to the extent of any lands not involved in this suit, and we now reaffirm that purpose.

Second. We stated in the judgment that the record did not disclose a dual assessment of this 20-acre tract for the year 1921, for the taxes of which year it was adjudicated to the state under an assessment in the name of D. Chapman. We erred in this. There is evidence in the record disclosing that the land was also assessed—but erroneously, we are sure—to H. G. Chapman for 1921. In this connection, our judgment contains the following as regards a dual assessment:

"The record does not disclose a dual assessment for this year. If such were true and taxes were not paid under either assessment prior to the sale, this would not invalidate the sale made under the correct and proper assessment. Dual assessment, per se, under the Constitution of 1921, is not cause for annulling a tax sale. It was so under the Constitutions of 1898 and 1913."

In support of our holding that the tax sales to Hamner for the taxes of 1927 and 1928 were null and void because for said years the state had indefeasible title under the tax sale in the name of D. Chapman for the taxes of 1921, we cited Neal v. Pitre et al., 142 La. 737, 77 So. 582; Board of Commissioners v. Concordia Land Company, 141 La. 247, 74 So. 921; Riggs Cypress Company v. Hanson Lumber Company, 127 La. 450, 53 So. 700; In re Quaker Realty Company, 122 La. 229, 47 So. 536.

Appellees call our attention to the fact that Neal v. Pitre, supra, was expressly overruled by the Supreme Court in Gamet's Estate v. Lindner, 159 La. 658, 106 So. 22,

and that this action of the court was in effect reaffirmed in Stockbridge v. Martin et al., 162 La. 601, 110 So. 828.

The other cases cited by us have not been expressly overruled. However, we find in St. Bernard Syndicate v. Grace, 169 La. 666, 125 So. 848, 849, expressions by the court directly in conflict, we think, with what is said by it in the Gamet and Stockbridge Cases. It is said there:

"It will be observed that in the section of the statute we have quoted no reference whatever is made to an assessment of property which has been sold to the state as a basis on which to compute the amount to be paid for redemption except for the year following that for which the sale was made. Indeed, there could have been no legal assessment made of the property for the years for which the plaintiff resists payment, and the plaintiff concedes this.

"The title to the property was in the state, and the state does not assess its own property for taxes."

Perhaps the latest action of the Supreme Court which throws light on this question is reflected from the denial by it of a writ in McCall v. Blouin et al., 18 La.App. 717, 138 So. 528, 529. In that case, Judge Westerfield, as the court's organ, said:

"It thus appears that following the adjudication of property to the city the law requires it to be assessed in the name of the person to whom it belonged at the date of adjudication for a period of one year, following which the property is to remain in the possession of the city until it shall have been redeemed in the manner pointed out. The fact that the property is continued upon the rolls in the name of the former owner, and taxes under the continued assessment collected, cannot operate as an estoppel against the city in claiming title to property which has not been redeemed, and a sale made under such erroneous assessment is null. See Neal v. Pitre et al., 142 La. 737, 77 So. 582, where it was said:

"'The sale of April 28, 1908, was based upon an assessment made in the name of "unknown owners," although at that time the title to the property was in the state. The state's property could not be sold in any such manner. * * *

"'Being of the opinion then that the tax sale of April 28, 1908, was a nullity, it could vest no title or interest in the property in Lyons or Pitre.'"

It will be noted that the Neal v. Pitre, supra, case is cited approvingly, in fact, that decision is relied upon for authority for the court's holding. The Supreme Court, in passing on the application for a writ, said that the judgment, the review of which was sought, was correct.

Act No. 315 of 1910, section 5, was adopted for specific purposes. One purpose, at least, was to protect the state against the loss of real estate to which it held good title through tax sales under subsequent assessment of such real estate to the tax debtor or some other person. It is no secret that the state has been often deprived and possibly defrauded of valuable lands by such irregular procedure. The Supreme Court had often held that the state in such circumstances was bound and estopped by the acts of its taxing officers, and upheld the title of the person or persons to whom the land was adjudicated, or their assigns, while the legal title was actually in the state. See Gauthreaux v. Theriot, 121 La. 871, 46 So. 892, 126 Am.St.Rep. 328, and cases therein cited.

It seems to us that any decision contrary to Neal v. Pitre, supra, and others cited by us in our opinion does violence to the letter and spirit of the 1910 Act. It will be noted that no reference is made to this act in the opinion in the Gamet Case. We are constrained to think the existence of the act was not called to the court's attention. The act is referred to in the Stockbridge Case, wherein Justice Thompson is the court's organ. However, this latter case is materially modified by what the court said in St. Bernard Syndicate v. Grace, supra.

Rehearing refused.