(113 So. 357)

No. 28043.

## HARDTNER v. DIXIE OIL CO., Inc.

May 23, 1927.

*(Syllabus by Editorial Staff.)*

1. **Mines and minerals** ⊙57—**Contract for lease, requiring lessee's approval, will not be interpreted to authorize arbitrary disapproval of valid title unless clearly stated.**

    Contract for oil and gas lease, requiring approval by lessee's attorney, will not be interpreted to authorize arbitrary disapproval of valid title unless contract is clear and unequivocal to such effect.

2. **Mines and minerals** ⊙57—**Lessor held not entitled to specific performance of contract to purchase lease requiring lessee's approval, where title was suggestive of litigation warranting lessee's disapproval.**

    In action for specific performance of contract for purchase of oil and gas lease, providing for approval of lease and title by lessee's attorney, plaintiff was not entitled to specific performance, where title was sufficiently suggestive of litigation as to warrant disapproval, and lessee's attorney exercised good judgment in advising lessee to decline lease.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Suit by Henry E. Hardtner against the Dixie Oil Company. From a judgment of dismissal, plaintiff appeals. Affirmed.

Thornton, Gist & Richey, of Alexandria, and Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant.

Hunter & Morgan, of Shreveport, for appellee.

BRUNOT, J. This is a suit to enforce specific performance of an alleged contract for the purchase of an oil and gas lease. The trial in the district court terminated by the rendition of a judgment rejecting plaintiff's demand and dismissing the suit at his cost. From this judgment plaintiff appealed.

The petition alleges that plaintiff acquired a mineral lease on property described as lot 13, section 13, township 10 N. E. 13 La. meridian, located in the parish of La Salle, La., from the state of Louisiana; that defendant proposed to purchase the rights of plaintiff in and to said lease for the sum of $10,000 cash and $10,000 to be paid out of one-half of the first seven-eighths of the oil produced, saved, and marketed from said land; that plaintiff has a good and merchantable title to the property, and that he tendered such a title to defendant, but that defendant refused to accept said title or to comply with its obligations, for the reason that plaintiff's lease had been forfeited. The prayer is for a judgment condemning defendant to accept the transfer of the lease; to pay plaintiff $10,000 with 5 per cent. per annum interest thereon from April 2, 1925; to develop the property and to pay to plaintiff $10,000 out of one-half of the first seven-eighths of the oil produced, saved, and marketed from the leased land; or, in the alternative, that the lease be declared to be the property of defendant, and that it be adjudged to pay to plaintiff $10,000 cash and $10,000 contingent upon the discovery, saving, and marketing of oil as set forth in the contract.

Defendant filed an exception of vagueness, coupled with an alternative motion for a bill of particulars and a prayer for oyer.

The prayer for oyer and the exception of vagueness were sustained, with the right reserved to plaintiff to file an amended petition. The documents called for in the prayer for oyer were filed, and the rule was discharged. A supplemental and amended petition was

filed, whereupon defendant excepted upon the ground that neither the original nor supplemental petitions disclose a cause of action. This exception was argued, submitted and overruled, and defendant answered the suit. The answer is lengthy. It appears in the transcript pages 26 to 33, inclusive. With reference thereto we need only state that it reiterates and reaffirms defendant's exception of no cause of action, and it puts every material allegation of the petition at issue. The prayer is for a rejection of the plaintiff's demands and a dismissal of the suit at his cost.

The contract upon which plaintiff's suit is based is a draft drawn in favor of plaintiff on the defendant by R. A. Jordan, an employee of the defendant. This draft is as follows:

"On approval of lease and title by R. A. Hunter, 10 days from date, pay to the order of Henry E. Hardtner, ten thousand & no/100 dollars, for: Assignment of O. & G. lease on lot No. 13, section 13, twp. 10 N. rng. 1 E. La Salle parish, La., 40 acres. Value received and charge the same to account of Dixie Oil Company, Incorporated. At Commercial National Bank 84–1, Shreveport, La.

"R. A. Jordan.

"The title for which this draft is given is subject to approval of company's attorneys and purchase thereof to approval of company's officers at Shreveport."

It is shown that R. A. Hunter, defendant's attorney, disapproved the title, and the defendant rejected the assignment of the lease and gave its attorney's disapproval of the title as its reason for so doing. The trial judge, in a well-considered opinion, says:

"The first question for consideration of this case is whether or not the disapproval of title by the attorneys, and the rejection of same by the company's officers is binding on the plaintiff, irrespective of the question of whether plaintiff tendered a good and valid title or not.

"Counsel for plaintiff contends that the court has a right to go into the question of title, and that plaintiff has tendered a good and valid title. Counsel for the defendant contends that the draft, which is the only con-

tract between the parties, even if it evidences a promise of sale, was based upon suspensive conditions, these conditions being the approval by the officials of the company, and the approval of lease and title by R. A. Hunter, attorney, and none of the company officials approved of the purchase; neither has R. A. Hunter approved the lease and title, and no obligation rests upon the defendant to accept same and pay for it.

"There can be no doubt that parties have the right to make such contracts as they see fit, and the provisions of such contracts are the law of that particular case, provided the contract contains nothing forbidden by law or contrary to public policy or good morals. Parties undoubtedly have the right to make conditional contract of sale dependent upon the happening of certain events. Generally speaking, a contract of sale is always dependent upon one party furnishing to the other a merchantable title, even when the contract makes no such provisions. As the contract in this case, such as it was, was dependent upon the approval of the company's officials at Shreveport, La., and this approval was never secured, we might as well leave the case right there, for we do not think it makes any difference why this approval was never secured, but the case is fully presented to the court on the other provisions of the contract relative to approval of lease and title by R. A. Hunter, and we therefore take up that provision.

"Counsel for plaintiff has cited, in support of his contention, the case of Whited & Wheless v. Calhoun, 122 La. page 100, 47 So. 415, and likewise a citation to Hollingsworth v. Colthurst, 78 Kan. 455, 96 P. 851, 18 L. R. A. (N. S.) p. 741, 130 Am. St. Rep. 382, but we do not think that any of these authorities are applicable to the present case. If the contract between the parties had been to furnish a title satisfactory to the Dixie Oil Company, then the authorities quoted would be applicable, but such was not the contract. The contract was dependent upon the suspensive condition that the lease and title should meet the approval of R. A. Hunter, the attorney of the defendant. The parties had the right to make such a contract, and, if the lease and title did not meet the approval of R. A. Hunter, we can see no valid reason why this court should interfere and say to the defendant that the lease and title should have met the approval of Mr. Hunter. While we do not think that the case of Flournoy v. Miller, 114 La. 1028, 38 So. 818, cited by counsel for the defendant, is fully decisive of the

question involved in this case, yet we do think it is authority for holding that such a condition in a contract as shown by the draft is enforceable.

"In contracts providing for the furnishing of satisfactory title, the weight of authority in the common-law states seems to be the same as the doctrine laid down in the Whited & Wheless case cited supra; yet even in some of these states holding to such a doctrine, notably California, New York, and Missouri, the rule seems to be that, where the contract provides that the title must be approved by purchaser's attorney, then the only question involved is whether it was ever approved by the attorney, and the question as to whether or not the title was a good and merchantable one did not arise.

"It is a well-known fact that in the oil business no reputable company desires to accept any title that is the least bit defective, suggestive of litigation, irrespective of whether that title can be considered on its face as a good and merchantable one, and we can see no reason why a perfectly valid and binding contract cannot be drawn providing for the approval of title by some specific person. Such a contract, in our opinion, is not illegal, and is not dependent upon whether or not the title tendered is a good and merchantable one, or satisfactory to the purchaser.

"Believing as we do, that the question of whether the title tendered is good and merchantable does not enter into this case, there is no necessity for going further into the defense set up by the defendant."

[1, 2] It is our opinion that an arbitrary disapproval of a perfectly valid title is rarely within the contemplation of the contracting parties, and, to thus interpret a contract, the instrument must be so clear and unequivocal as to leave no room for doubt. With this qualification, we concur in the views expressed by our learned brother of the district court. Whether or not the contract or agreement in this case is perfectly clear or ambiguous is immaterial, for the record shows that the title was sufficiently suggestive of litigation, if not actually doubtful and uncertain, as to warrant its disapproval, and therefore defendant's attorney exercised sound reason and good judgment in advising his client to decline it.

For these reasons we think the judgment appealed from is correct, and it is therefore affirmed, at appellant's cost.