148 So. 683

LOMEL REALTY CORPORATION v. CHOPIN.

No. 32043.

May 1, 1933.

Rehearing Denied May 29, 1933.

John A. Woodville, of New Orleans, for appellant.

Warren V. Miller, of New Orleans, for appellee.

LAND, Justice.

The Lomel Realty Corporation has instituted the present suit to compel defendant to perform specifically an offer and agreement to purchase from plaintiff 19.4 acres in the town of Claiborne, St. Tammany parish, less approximately 4.7 acres, and to recover from defendant a stipulated attorney's fees of 25 per cent. and a commission of 4 per cent. on the amount offered for the property and all costs incurred, in the event of defendant's failure to comply with his contract.

Defendant admits in his answer tender of title by plaintiff and his refusal to accept same, and alleges as the grounds justifying his action:

(a) That the property tendered to him was not the property he had agreed to purchase from plaintiff.

(b) That the property had been sold to the state for state taxes of the year, 1929, and was not, therefore, the property of plaintiff but of a third person, and that defendant's offer and agreement to purchase was null.

(c) That the property was encumbered by a lien in favor of Edmund W. Ullrich and that the same had not been canceled at the time of the tender.

The case was tried upon these issues in the lower court, and judgment was rendered in favor of plaintiff for the balance of the purchase price, with interest from judicial demand, and also for attorney's fees in the sum of 25 per cent. on the sum of $4,250, the purchase price, and in the further sum of 4 per cent. of the sum of $4,250, the purchase price, as real estate broker fee.

It was further decreed "that subject to the vendor's lien and privilege in favor of the plaintiff, Lomel Realty Corporation, for the sum hereinabove set forth, that this judgment shall constitute title from the said Lomel Realty Corporation to the said Joseph B. Chopin of the following described

property: * * *." (Then follows the description.)

From this judgment defendant has appealed.

1. The record shows that defendant first made an offer for 19.4 acres, which was refused as plaintiff did not own that much property; that later defendant offered to purchase 15 acres, more or less, but that this offer was declined on account of insufficiency of price; and that, finally, on November 28, 1930, defendant made an offer through Ernest A. Carrere's Sons, a duly licensed brokerage firm of the city of New Orleans, and agents of plaintiff, to purchase the 15 acres, more or less, in dispute in this case, and that this offer was accepted by plaintiff on the same day that it was made.

The terms of the contract were $2,125 cash, and the balance in three installments of $708.33 each, payable on or before 1, 2, and 3 years after date, with 7 per cent. interest per annum.

On December 1, 1930, defendant executed, as part of the purchase price, a demand note for $425, for which plaintiff has given credit in the present suit, thereby reducing the cash consideration for the sale from $2,125 to $1,700.

2. On April 9, 1931, plaintiff, through its president and attorney, called at the office of Mr. J. A. Woodville, defendant's notary and attorney, and left in his possession a certificate of redemption from the register of the state land office, No. 264—B, dated April 6, 1931, redeeming from the state the property sold for the taxes of the year 1929.

In Gamet's Estate v. Lindner, 159 La. 663 and 664, 106 So. 22, 24, it is said: "The purpose of the law in authorizing an adjudication for unpaid taxes to either taxing authority, the state or one of its subdivisions, is, primarily, to secure the taxes due on the property adjudicated without impairment of the lien of either. * * *

"The state does not acquire a perfect title to the property, since the former owner, or some other person in interest, may redeem it, until cut off from so doing by some action of the state taken more than 12 months after the recordation of the tax deed in the conveyance records. Muller v. Mazerat, 109 La. 116, 33 So. 104; Charbonnet v. Forschler, 138 La. 279, 70 So. 224.

"In Charbonnet v. Forschler, supra, where the right of the owner to redeem after the lapse of one year was contested, this court said, at page 281 of the opinion (70 So. 225):

" ' * * * It is manifest that the sole object of the revenue law was to collect taxes, and not for the state to purchase property. The state treasury has uses for all of the money to be collected for taxes; and the state is without interest in taking the property of the unfortunate tax debtor, and in holding it as owner. The right is reserved to the taxpayer to compel the tax purchaser to permit him to redeem the property within one year. After that time the purchaser, if he desires to do so, may resist the delinquent taxpayer in any effort to redeem the property sold. But this right to resist is a right given to the tax purchaser alone.

" 'It has been the uniform custom of the auditor to permit tax debtors to redeem their

property adjudicated to the state for delinquent taxes, and collect the taxes due, together with interest, penalties, and costs, at any time. And, this right has been construed by the Legislature also to exist in favor of tax debtors.'

"And, after discussing the pertinent provisions of the law, the opinion, at page 282 (70 So. 225), contains the following, viz.:

" 'It is thus seen that the executive and legislative branches of the government have recognized the right of tax delinquents to redeem their property more than twelve months after said property had been adjudicated to the state for delinquent taxes.'

"In Alter v. Shepherd, 27 La. Ann. 207, the court said:

" 'The sole object of the state is to collect its revenues, and not to destroy rights, further than is absolutely necessary to effect such collection.' "

■ A tax title in the state, not being a perfect title to the property, since the owner may redeem it, defendant cannot successfully contend in this case that the property in dispute is owned by the state, a third person, under a tax title, and that, therefore, defendant's offer and agreement to purchase, upon which plaintiff relies, is a nullity.

■ 3. On November 21, 1930, long prior to the agreement of sale from plaintiff to defendant, plaintiff entered into a written agreement to sell to Edmund W. Ullrich 4.7 acres of the 19.4-acre tract herein involved, the consideration of the sale being the cancellation of the Ullrich lien of $2,340.36 on the remainder of the tract, approximately 15 acres, which defendant offered and agreed to purchase.

The sale to Ullrich, however, was not consummated until March 28, 1931, owing to the inability of plaintiff to raise the cash to pay the taxes on the property, and the Ullrich lien on same was canceled April 8, 1931.

On April 9, 1931, when plaintiff made its last and final tender of title to defendant, the only incumbrance on the property, as shown by certificate of the district clerk and ex officio recorder of the parish of St. Tammany, of date June 1, 1932, consisted of a mortgage granted by plaintiff to Louis R. Hoover for $300, represented by a promissory note for like amount, dated November 24, 1931, and payable on or before one year after date.

This incumbrance was no bar to the transfer in this case, as it could be paid by defendant out of the unpaid portion of the purchase price, which is abundantly ample for that purpose.

As said by this court in Jaenke v. Taylor, 160 La. 115, 106 So. 711, 714: "As to the incumbrance, it is well settled that a mortgage on the property forms no legal justification for refusing to accept title where the price agreed to be paid for the property is more than sufficient to satisfy the mortgage debt. Grimshaw v. Hart, 6 Rob. (La.) 265; Kinberger v. Drouet, 149 La. 999, 90 So. 367; Murphy v. Hussey, 117 La. 390, 41 So. 692."

■■ 4. The offer and agreement to purchase, signed by defendant, contains the following stipulation: "In case I fail to comply with above offer if accepted I agree to pay

twenty-five per cent. attorney's fees, four per cent. commission on amount offered and all cost incurred. Act of sale before Purchaser's Notary Public at purchaser's expense."

This stipulation is not at all a special one applicable to the present case only, but is in a printed form for general use by real estate agents. There are no commas after the words "per cent.," only dots being used by the printer to note the abbreviation of the word "per centum." There is nothing ambiguous about the punctuation, or doubtful about the meaning and intent of the stipulation. It means exactly what it says. Defendant is to pay 25 per cent. attorney's fees, and 4 per cent. commission on the amount offered by him for the property. The commission, without doubt, is that of the real estate broker of plaintiff.

This stipulation, by no means, can be reasonably construed as fixing the full measure of liability of defendant, and as restricting plaintiff, the injured party, to an enforcement of its provisions as the full extent of his remedy, as contended by counsel for defendant. There is not one word about liquidated damages in this stipulation. It is clear, therefore, that the payment of attorney's fees and of commission to the real estate broker is merely an incidental matter, which does not affect at all plaintiff's right to specific performance in this case. It may be that plaintiff has driven a hard bargain, but this court is not concerned with the wisdom of contracts, when they are made according to law.

Judgment affirmed.