**LOVELL et al. v. DULAC CYPRESS CO., Limited, et al.**

**DULAC CYPRESS CO., Limited, et al. v. LOVELL et al.**

No. 9575.

Circuit Court of Appeals, Fifth Circuit.
Jan. 15, 1941.

Rehearing Denied Feb. 12, 1941.

SIBLEY, Circuit Judge, dissenting.

———◆———

David Gertler, of New Orleans, La., for appellants William S. Lovell and Douglas Gordon Lovell.

R. C. Milling, of New Orleans, La., for appellees.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was for title to, and for damages for timber cut from, the E½ of the E½ of Section 73 T. 19 S.R. 17 E., Terrebonne Parish, Louisiana.

The claim as to title was that plaintiffs, under the tax redemption statutes of Louisiana,[1] had in 1938 while the title was in the state, redeemed the land from the tax adjudication of June 8, 1895, against their ancestor and had obtained a certificate of redemption therefrom. The claim as to damages was that defendant had before 1938, trespassed upon and removed from the land, large quantities of valuable timber. To the suit for title and for damages there were two main defenses. The first was that plaintiffs' attempt at redemption and the issuance of the redemption certificate was wholly ineffective, for under and by virtue of Act No. 97 of 1890, the State had long before conveyed the lands in question to the Board of Commissioners for the Atchafalaya Basin Levee District whose title defendants held. The second was that defendant and those under whom it claims had held actual physical and undisturbed possession of the land as owners for more than thirty years and the prescription, of ten and thirty years, acquirendi causa, had barred defendant's suit.

There was an alternative defense to the action for damages that, if the redemption was valid it was not retroactive as to the trespass, and the trespass and taking having occurred while the title was in the state, plaintiffs were without right of action therefor.

Submitted to the court without a jury upon an agreed statement of facts,[2] on the

[1] "If the owner or any person interested personally or as heir * * * or otherwise, in any lots or lands bid in for and adjudicated to the State, as long as the title thereto is in the State, shall pay * * * the Register of the State Land Office * * * shall execute and deliver to such persons a certificate of the same * * * which shall be held and taken as evidence of the redemption of such land * * *." Act No. 41 of 1912, amending Section 62 of Act No. 170 of 1898. Also Act No. 237 of 1924.

[2] Prior to June, 1895, plaintiffs' ancestor was the owner of the property in question and on that day it was adjudicated to the State of Louisiana for unpaid taxes thereon; on January 12, 1938, plaintiffs paying all taxes required of them, redeemed the property from the State of Louisiana and obtained and recorded in the Parish of Terrebonne, a redemption certificate, executed by the Register of the State Land Office.

As to defendant's claim of title by Act No. 97 of 1890, the Louisiana Legislature created the Board of Commissioners for the Atchafalaya Basin Levee District and granted to said Board all of the lands in said district, then belonging to the State of Louisiana, or as to which the State might thereafter become owner by or through tax sales, it being provided that conveyances should be made to the Board "by proper instruments of conveyance" after the period of redemption shall have expired, by the Auditor and the Register of the State Land Office on behalf of and in the name of the State, upon request of the Board or its president, the president to cause said conveyance to be properly recorded in the recorder's office of the parish where the land was situated.

At the time of the execution of the tax sale to the State dated June 8, 1895, hereinabove referred to, the Auditor was vested with jurisdiction

questions of title and plaintiffs' right of action for damages, there was a judgment for plaintiffs for title and against them upon their claim for damages. Both plaintiffs and defendant have appealed.

Appellant's primary position as to the title is: that though no formal conveyance from the state to the Board of Commissioners can be found of record, the notation on the Auditor's record, "Atchafalaya Basin Levee District Fund", taken with the testimony of the employees of the Auditor and of the Land Office, the 1912 certificate of the Register of the Land Office, the recitations in the deed from the Board to Mrs. Engman and the long continued possession of Mrs. Engman and her successors under that deed, establishes that there was a deed of conveyance from the state which has become lost or mislaid. In the alternative it insists that these facts certainly show a vested right in defendant as successor to the Board to have a deed of conveyance from the state, and when plaintiffs attempted to redeem the property it was no longer the property of the state, subject to redemption. Its secondary position as

over tax lands; he maintained in his office books wherein he entered as a permanent record, the description, date and other essential facts concerning adjudications of lands at tax sales to the State of Louisiana, which record contained a column under the heading "Remarks and Date of Redemption" in which was entered the disposition subsequently made of the lands by the State. It was customary for the Auditor's office to enter in this column the fact of the redemption of the lands, if and when redeemed, or if a conveyance was executed to a levee board subsequent to the date of redemption reference thereto was entered in this column. There appears in this record, opposite the entry having reference to the adjudication to the State and under the heading "Remarks and Date of Redemption", the words "Atchafalaya Basin Levee District Fund."

The Auditor's records, referred to above, including the record in which the entries therein referred to were made, were subsequently filed with the Register of the State Land Office and became part of the records of that office. Mr. W. B. Seymour, in the State Auditor's office and who has been connected with that office since August 1, 1904, and Mr. Carl Campbell, Chief Clerk of the State Land Office and who has been connected with that office since January 1, 1920, stated that they have been familiar with these records since the dates that they became connected with their respective offices and it was their understanding that the entries made by the previous officials, including the entry "Atchafalaya Basin Levee District Fund" (appearing under "Remarks and Date of Redemption" opposite the entry concerning the adjudication above referred to) meant that the lands therein described had been transferred to the Atchafalaya Basin Levee District.

In January of 1900 the Board of Commissioners for the Atchafalaya Basin Levee District executed an instrument conveying to Mrs. Engman "all of the rights, titles and privileges acquired by the Board from the State of Louisiana by Act 97 of the Legislature at its regular session in the year 1890, in and to the E½ of E½ of Section 74, T. 19 S. R. 17 E., which said lands were transferred to the Board under the authority hereinabove mentioned and the Board of Commissioners by this present act does transfer and quit claim unto Mrs. Engman all of its title thus acquired." This instrument was not actually recorded until June 16, 1914. On February 6, 1912, there was placed of record in Terrebonne Parish, an instrument signed by Fred Grace, register of the State Land Office, wherein he declared: "I * * * do hereby certify that the records of the State Land Office show that the following described lands which were sold to the State of Louisiana for the years enumerated, or assessments in the names of the parties stated, have been transferred to the Atchafalaya Basin Levee Board under the provisions of Act 97 of 1890.", the description of the lands, including the lands herein in dispute. This is the only instrument affecting this land signed by either the register or auditor which could be found in the records of the register, the auditor, the Levee Board of the Clerk of the Court of Terrebonne Parish.

In 1904, Mrs. Engman transferred her right, title and interest in the lands to the Burguieres Company, Ltd., and on June 26, 1914, that company transferred the property to defendant. On or about 1903 or 1904, Mrs. Engman went into actual physical possession. This possession has been continuous in her and her vendees since. The Dulac Cypress Company, assessed and paid the taxes on the property for the years 1927 to 1938, and it did cut and remove certain timber from the lands in dispute. The State has taken no act to dispossess the Company nor to proceed against it for trespass.

to title is that if its showing as to record title is not sufficient, it has shown title by prescription against plaintiffs in that, though the state may not be prescribed against, plaintiffs' title, subject to that of the state, may be. It insists in short; that the state's title was an inchoate one becoming absolute only when the state sells; that plaintiffs' redemption was not a purchase of an absolute title but only the extinguishment of an inchoate one with the result that plaintiffs were restored to the title and rights of their ancestor as of the time before the land was sold to the state, and they and their ancestor having in theory of law been continuously the owners since that date, their rights and titles have been lost to defendant by prescription. Upon defendant's claim that it has a conveyance and if it hasn't it has the right to demand one, it is plaintiffs' position; that defendant's proof has wholly failed to show record title to the land;[3] and that while prior to Act No. 237 of 1924, defendant as successor to the rights of the Board, would have been in position to demand title from the state, since and by that act, defendant's right so to do, has been cut off, for no conveyance having been made or demanded that act by implication, repealed Act No. 97 of 1890, and operated as a withdrawal of the offer the first act evidenced. To defendant's claim to title by prescription plaintiffs reply that pending redemption, the state has not an inchoate and incomplete, but a full, complete and absolute title, and since prescription may not run against the state, defendant's possession during the period of the state's ownership, was wholly unavailing to it.

To defendant's claim that plaintiffs would be without right to sue for trespasses committed while the title was in the state, plaintiffs reply; that a redemption is different from a purchase; that by it the title was not acquired, it was merely relieved of the adjudication to the state and title was revested in them and their ancestor as of the date of sale; and, that upon the principle of relation they are regarded in law as having been in continuous ownership of the property and therefore entitled to sue for damages, those who have trespassed upon it.

■■ We think the judgment was right throughout and should be affirmed.

Whatever might have been said, before State ex rel. Fitzpatrick v. Lucille May Grace, 187 La. 1028, 175 So. 656, as to the law of this case, as to defendant's claims of title and of right to title from the state, and whatever difficulties might have presented themselves in determining these claims, the decision in that case has removed the matter from discussion by flatly settling it that one situated as defendant is, has, since the Act of 1924, neither title nor right to demand title from the state. The district judge decided the title questions as he did upon the authority of the Fitzpatrick case. It can serve no useful purpose for us to analyze that case or canvass and discuss appellant's arguments against its binding force. It suffices to say that we agree with the district judge that that case supports his determination, that we are bound by it, and under its authority the district judge was right in concluding that defendant had made out neither a record title nor a right to demand one.

■■ We think the district judge was right too in holding that, the title in the state during all the period of defendant's possession, indeed until redemption, was a complete and absolute one and that no prescriptive title has been acquired by defendant. Appellant's effort to distinguish between prescribing against the state and against the right of the redemptioner, will not, we think, do. The statutes provide that until the state has sold the property it may be redeemed. The statute and the decisions under it make it clear; that after the primary year has passed and before actual redemption, the state is absolute owner of, and can do what it will with the property; and that until redemption, the redemptioner has no right or title whatever in it. Home Land Co. v. Bryant, 6 La.App. 130; Baker v. Smith, 44 La.Ann. 925, 11 So. 585; Perrin v. Stuyvesant Ins. Co., 140 La. 812, 74 So. 110; St. Bernard Syndicate v. Grace, Register, 169 La. 666, 125 So. 848; Wall v. Rabito, 138 La. 609, 610, 70 So. 531; Board of Com'rs v. Concordia Land & Timber Co., 141 La. 247, 74 So. 921; 2 C.J. 215; 2 C. J.S., Adverse Possession, § 12. This being so, it would, we think, be unreasonable in the extreme to hold that one who is unable to assert dominion over property, who indeed has no title to or claim against

---

[3] Cf. Blevins v. Sun Oil Co., 5 Cir., 110 F.2d 566.

it, but merely a right to redeem it, is barred of that right by a possession which in law is wholly ineffective against the state, the then.owner and rightful possessor.

Finally, we think the court was right in deciding plaintiffs' claim for damages against them, for though it be true that upon redemption the plaintiffs reacquired the title for certain purposes, as of the date of its adjudication, this purpose was, as the certificate in terms declares, of legally subrogating them, "As owner to all rights, liens, mortgages of the state incident to and growing out of the taxes for the year 1894, and its records in the offices required by law without prejudice to any privileges or mortgages of the state, parish or municipal corporation, for other taxes." The owner then in retaking the property, except for subrogation to the state's liens for the taxes of 1894, retook it not as it was in 1895, but as it was in 1938, and it cannot we think, be said that by the redemption, plaintiffs must by a fiction be regarded as the owner of the property continuously from 1894, and as such owner, entitled to sue for trespasses committed on the property before its redemption. If, after redemption, plaintiffs are, as they assert for the purpose of their damage claim, to be considered as having been the owners of the property continuously since 1894, it is difficult to escape the conclusion that defendant is right in its insistence that plaintiffs have lost their title by prescription. For, if after and because of redemption, they must be fictionally regarded as owners of the property, at the time the timber was taken, so as to be entitled to sue for trespass thereon, they must by fiction be regarded as such owners during that period for purposes of prescription against them and as having long ago lost the title thereby.

We think the district judge instead of treating the matter fictionally as plaintiffs and defendant alternatively urged upon him for their respective purposes to do, wisely treated it from the standpoint of the facts as they were, and disposed of the claims of prescription and trespass accordingly. While we are not bound by it plaintiffs' case in our opinion is not bettered by the West Virginia decision[4] on which they rely. That was a case of an owner of an inchoate title to a tract of coal under a statute, which required the owner in order to perfect his claim, to have the same charged on the land books of the county where the land lay for five successive years, and provided that failure to do so would result in a forfeiture to the state for non-entry. Construing the West Virginia Statutes as giving the state under such a situation, not an absolute title to the land but only a claim against it as security for its taxes so that when the land was sold for more than the taxes, the state got only its taxes out of the sale, the over plus, if any, going to the owners, that court held that under such a forfeiture an inchoate title to the land remained in the owner and he could maintain an action for trespass thereon. Holding that as a general rule a plaintiff to maintain an action of trespass to real property must be either an actual or constructive possession, Gillison v. Charleston, 16 W.Va. 282, 37 Am.Rep. 763, the court quoted from 26 R.C.L. 958: "The plaintiff must possess the real estate at the time when the alleged injury occurred, as a rule, in order that he may maintain an action of trespass therefor.

"However, if he acquired the title after the injury, and the title is retrospective in character, dating back prior to the time of the injury, he may maintain his action." Saying that in West Virginia, the state had no complete title to the land but only a title to it for the purpose of getting its taxes out, and, "it· seems to have been the purpose and intent of the Legislature, * * * that when the former owner redeems his land he is entitled to receive, not only his former title, but the land itself as it was immediately before the title became vested in the state, and that he is reinvested, not only with the same title he had before the forfeiture, but the right to institute an action of trespass the cause of which rose while ·the title to the land was vested in the state", it held the redemptioner entitled to sue.

Not only does it appear that in a later opinion in the same case, Elk Garden, etc., Co. v. Gerstell, 100 W.Va. 472, 131 S.E. 152, the Supreme Court of West Virginia expressed grave doubt whether the rule laid down by it was correct, but a reference to Gilbert v. McDonald, 94 Minn. 289, 102 N.W. 712, 110 Am.St.Rep. 368, the case on which the quotation from R.

[4] Elk Garden, etc., Co. v. Gerstell, 95 W.Va. 471, 121 S.E. 569, 570, 33 A.L.R. 298.

C.L. is based, shows that that case was not one of a redemption from a tax sale. It was a soldier's claim where it was held that after the soldier had perfected his inchoate or equitable title, it would be considered that upon the issuance of the patent, the legal title related back to the time of the application and enured to his benefit from that date. This decision is in conformity with the general rule that inchoate titles in process of completion relate back when completed, to their inception. Familiar instances, of this are found in community property states, where a title, separate or community when inchoate, remains separate or community when completed.[5] The West Virginia case on which appellants rely is an attempt to apply this doctrine to a coal entry forfeiture. The rule controlling here where the state after the expiration of a year has full title until redemption has occurred, is the same as that prevailing where property has been sold after the commission of a trespass thereon. That rule is, that a claim for trespass does not pass to the purchaser for the claim is not a part of the land or an appurtenance thereof, but is the personal property of the vendor. Aiken v. Sondheimer Co., 165 La. 299, 115 So. 495; Irvine v. Oelwein, 170 Iowa 653, 150 N. W. 674, L.R.A.1916E, 990. The action of the court in refusing plaintiffs' claim for damages was right as was its action in awarding plaintiffs the title.

The judgment is affirmed.

SIBLEY, Circuit Judge (dissenting).

I think the defendants below showed title by prescription good against plaintiffs' title.

By Louisiana Civil Code, Art. 3478: "He who acquires an immovable in good faith and by just title prescribes for it in ten years." Defendants' title here was through a deed executed in 1900 from the Levee Board for value and in good faith, duly recorded in 1912, and with possession ever since. It is not denied that this is just title under this Article. By Article 3499: "The ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith." By Article 3521: "Prescription runs against all persons, unless they are included in some exception established by law." No exception applicable to plaintiffs is set up. The Louisiana Constitution however, Art. XIX, Sec. 16, excepts the State. The title by prescription is original, independent of the record title, and unaffected by incumbrances or limitations on the latter. 2 C.J.S., Adverse Possession, §§ 200, 201, 202. This land has been assessed for taxes by the State against defendants and they have paid the taxes since 1927. These defendants as owners could have redeemed the land from any tax sale to the State had they known one was outstanding. Bentley v. Cavallier, 121 La. 60, 46 So. 101.

The plaintiffs' title is confessedly overridden by the prescription unless helped by the tax sale to the State in 1895, redeemed in 1938. The effect of the redemption was not to get a fresh title from the State, but only to remove the State's claims from the title, to cancel them, to restore the taxpayer to his rights. He received not a conveyance from the State but a certificate of redemption. 4 Cooley on Taxation, 4th Ed., Sec. 1577. 61 C.J. Taxation, § 1788. All the incumbrances and limitations incident to his title are revived. It is plain that the title held by the State before redemption is, under Louisiana decisions, not absolute, but for the security of the taxes, and subject to the right of redemption. Moore v. Boagni, 111 La. 490, 35 So. 716, on rehearing; Charbonnet v. Forschler, 138 La. 279, 70 So. 224; Gamet's Estate v. Lindner, 159 La. 658, 663, 106 So. 22; Sitges v. St. Bernard Syndicate, 169 La. 674, 125 So. 850; State ex rel. Tulane Homestead Ass'n v. Montgomery, Tax Collector, 185 La. 777, 788, 171 So. 28. The State may cut off the right of redemption, which is absolute for only a year, by disposing of the property, but it has always been recognized as existing until such disposition is made, Charbonnet v. Forschler, supra; and was in 1912 so stated in a statute. Act No. 41 of 1912. Under that statute, until the State conveys away the title, the owner has the legal right to redeem, and his own dispositions of the land may be enforced: Lomel Realty Corporation v. Chopin, 177 La. 474, 148 So. 683. The State's rights were protected from pre-

---

[5] Merren v. Commissioner of Internal Revenue, 5 Cir., 51 F.2d 44; Commissioner of Internal Revenue v. King, 5 Cir., 69 F.2d 639, 640; Wrightsman v. Commissioner of Internal Revenue, 5 Cir., 111 F.2d 227; Welder v. Lambert, 91 Tex. 510, 522, 44 S.W. 281; Manchaca v. Field, 62 Tex. 135; 23 Texas Jur. Secs. 47-112.

scription but the State's rights are not involved here. They are ended. They have not been conveyed by the certificate of redemption to the plaintiffs. The right and title of the plaintiffs is not excepted from the operation of the prescription which has ripened in the defendants. The defendants, I repeat, might have redeemed under the statute of 1912 as "owner or any person interested"; and the redemption by the former owner is only for the benefit of whomever may be found entitled in this case. Benton v. Benton, 106 La. 99, 30 So. 137. The plaintiffs are entitled to reimbursement by way of subrogation, (Sitges v. St. Bernard Syndicate, 169 La. 674, 125 So. 850), but are not entitled after forty years of negligent if not acquiescent waiting to get the land back. They might at any time have redeemed and brought suit as they have done. Their voluntary failure did not suspend the prescription. State. ex rel. Fitzpatrick v. Grace, 187 La. 1028, 175 So. 656, on which the majority opinion is rested has no bearing on the questions I have discussed.

On Rehearing.

PER CURIAM.

Neither of the judges who concurred in the opinion desiring a rehearing, it is ordered that the motions for same be denied.