SMITH, Presiding Justice, for the Court:
Bert Cupit, Jr. and his two daughters filed suit in the Chancery Court of Jefferson County on October 13, 1977, seeking specific performance of a ten-year royalty deed between themselves and appellant E. L. Figg. The chancellor ordered performance of the remaining period of the ten-year term and Figg appeals.
Cupit and his daughters agreed to sell Figg a one-half royalty interest in twenty-seven acres of land in the Union Church Community of Jefferson County. The agreed price for conveyance of the ten-year royalty was $9,112.50.
After the deed was signed by Cupit and his daughters, Figg delivered to Cupit a draft drawn on the First National Bank of Jackson in the amount of $9,112.50. On the face of the draft appeared the following words, “UPON APPROVAL OF TITLE BUT NO LONGER THAN 10 DAYS AFTER ARRIVAL AT COLLECTING BANK.” Figg testified that the deal was premised upon the condition that he have ten days to check and approve the title.
On November 16, 1976 the check was deposited in Cupit’s bank in Brookhaven. The royalty deed was attached to the draft. It was never established when the draft arrived at the collecting bank, but it was stated that it generally takes two days for a draft to arrive at the collecting bank after its deposit.
On November 17 Figg employed a Port Gibson attorney, Allen Burrell, to check the title. It is not disputed that the attorney is a reputable and competent attorney. Bur-rell made an examination of the land records on November 18 and found four items, which he considered questionable, concerning the title. One concern was that when Cupit’s predecessor in title, his father Bert Cupit Sr., took title to the property there was a reservation outstanding of one-half of the minerals. Another item was that the deed by which Cupit Jr. received the property passed title to him and his wife Imogene as joint tenants and Imogene had not signed the royalty deed. The final two items which the lawyer questioned related to the survey description and the acreage content.
The day after his title examination, the Port Gibson attorney called Figg, related the problems with the title, and told Figg that he could not approve the title unless the problems were cleared up.
Relying upon the lawyer’s findings, Figg informed Cupit that the deal was off and instructed First National Bank not to pay *724 the draft. This occurred within the ten day period stipulated on the face of the draft.
As it turned out, it subsequently developed that the attorney had overlooked a deed granting Cupit’s predecessor in title the outstanding mineral interest in 1952. Also, Mrs. Imogene Cupit, the joint tenant owner of the property, had died prior to the execution of the royalty deed thus extinguishing her interest in the property.
The chancellor ordered Figg to pay 7/io of the $9,112.50, an amount which equaled the balance outstanding on the ten-year term specified in the deed.
Figg argues on appeal that the words on the draft — “UPON APPROVAL OF TITLE BUT NO LONGER THAN 10 DAYS AFTER ARRIVAL AT COLLECTING BANK” — created a purchaser satisfaction contract which required that the title not be merely merchantable, but one satisfactory to the purchaser.
The death of the joint tenant was a matter in pais, not reflected by the land records. While it appears now to be conceded that she was, in fact, deceased, and that there were answers to other questions raised by the lawyer, the question was not whether the grantors who executed the deed had a merchantable title, but whether the title was in such condition, in his lawyer’s opinion, as to meet that individual’s unqualified approval within the brief time limited.
When the excitement of the prospect of oil proauction enters a county and of quick riches “beyond the dreams of avarice,” time becomes of the essence and litigation the order of the day. It is not unreasonable that a knowledgeable purchaser should desire to buy only mineral royalties with nothing left to explanation or proof of matters in pais, such as death of the owner of an interest upon whose estate no administration is had. Figg had a right so to contract. He could rely upon the opinion of his lawyer and, in the absence of fraud or bad faith (of which there is no suggestion here) may reject a title not approved by him.
We have found no Mississippi cases addressing purchaser satisfaction contracts. However, the courts of Louisiana and Texas have repeatedly upheld such contracts in transactions similar to the instant case.
In Hardtner v. Dixie Oil Co., 163 La. 1011, 113 So. 357 (1927) suit was brought to specifically perform an alleged contract to purchase an oil and gas lease. The contract on which the suit was based was a draft drawn by the purchaser in favor of the vendor. The draft contained a notation that payment was subject to the approval of title by the purchaser’s attorney. When the attorney disapproved title and the purchaser rejected the lease, the vendor sued for specific performance. The trial court refused to order specific performance and the Louisiana Supreme Court agreed. The Court quoted with approval from the trial court’s opinion.
It is a well-known fact that in the oil business no reputable company desires to accept any title that is the least bit defective, suggestive of litigation, irrespective of whether that title can be considered on its face as a good and merchantable one, and we can see no reason why a perfectly valid and binding contract cannot be drawn providing for the approval of title by some specific person. Such a contract, in our opinion, is not illegal, and is not dependent upon whether or not the title tendered is a good and merchantable one, or satisfactory to the purchaser.
(Id. at 1015, 113 So. at 358).
See also Izquierdo v. Kenner, 11 La.App. 594, 123 So. 366 (1929).
The law is well settled in Texas, a state which has had occasion to deal with the question more often than any other heretofore, that a provision providing that a purchase is subject to the approval of title by the purchaser’s attorney will be given effect so long as the attorney’s failure to approve the title is not arbitrary or in bad faith. Smith v. McMillan, 352 S.W.2d 871 (Tex.Civ.App.1961); Campbell v. Hart, 256 S.W.2d 255 (Tex.Civ.App.1953); Dixie Oil Co. v. McBurnett, 6 S.W.2d 83 (Tex.Civ.App.1928); City of Amarillo v. W. L. Slay- *725 ton & Co., 208 S.W. 967 (Tex.Civ.App.1919). See also Annot., 47 A.L.R.2d 441 (1956).
After studying the decisions from our sister states we are of the opinion that the notation on the face of the draft from Figg to Cupit was an agreement between them and constituted a purchaser satisfaction contract. Figg was given only ten days to act. Thus when Figg dishonored the draft in good faith within the ten-day period, acting upon the advice of his attorney, he was within his contractual rights. It is of no consequence that the attorney’s advice later proved erroneous. As was stated by the Louisiana Supreme Court in Hardtner, no one in the oil business desires to accept a title which invites or is the least bit susceptible to litigation despite the fact that an investigation of matters in pais makes the title seem merchantable.
Therefore, the chancellor’s decree of specific performance is reversed and a decree is entered here for appellant.
REVERSED AND RENDERED.
PATTERSON, C. J., ROBERTSON, P. J., and SUGG, WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.